Nancy K. Delaney, #70617
Nicholas R. Kloeppel, #186165
MITCHELL, BRISSO, DELANEY & VRIEZE
Attorneys at Law
814 Seventh Street
P. O. Drawer 1008
Eureka, CA  95502
Tel:  (707) 443-5643
Fax: (707) 444-9586

Attorneys for Defendants
COUNTY OF HUMBOLDT; SHERIFF MICHAEL
DOWNEY; TIM HERSHBERGER; DAVID SWIM;
TERRI BITTNER; TIM HAMMER and LEO BASLER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANY BORGES, individually and as successor-in-interest to Daren Borges, | CASE NO.: 15-CV-00846 YGR |
| Plaintiff, | SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016 |
| vs. | |
| CITY OF EUREKA; MICHAEL STELZIG; BRYAN FRANCO; JOHN DRAKE GOODALE; COUNTY OF HUMBOLDT; SHERIFF MICHAEL DOWNEY; TIM HERSHBERGER; DAVID SWIM; TERRI BITTNER; TIM HAMMER; LEO BASLER; CALIFORNIA FORENSIC MEDICAL GROUP, INCORPORATED, a California Corporation; ROBERT EURY; ANN HAMPTON; and DOES 1–10, inclusive, | |
| Defendants. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................1

II.     LEGAL DISCUSSION ..................................................................................2

     A.     Summary Judgment Should Be Granted As To Plaintiff's Fourteenth
          Amendment Denial Of Medical Care Claims Under The Deliberate
          Indifference Standard Articulated In *Castro*..............................................2

          1.   Correctional Personnel Made The Intentional Decision to Place Borges In
              The Sobering Cell, Summon A Medical Screening And Monitor Him On
              Video, By Listening To Him and Performing Cell Checks At 15 Minute
              Intervals........................................................................................................3

          2.   The Placement Of Borges In The Sobering Cell, Summoning A Medical
              Screening And Monitoring Him, Did Not Place Decedent At Substantial
              Risk Of Suffering Serious Harm ..................................................................3

          3.   Even Assuming, *Arguendo*, That The Conditions Put Plaintiff At Substantial
              Risk, A Reasonable Officer In The Circumstances Would Not Have
              Appreciated The High Degree Of Risk Involved And The County
              Defendants, Otherwise, Took Reasonable Available Measure To Abate Any
              Risk To Decedent..........................................................................................3

          4.   The County Defendant's Conduct Did Not Cause Borges' Death ...................7

     B.     As There Is No Constitutional Violation Or Any Unconstitutional Policy,
          Practice Or Training, Judgment As A Matter Of Law Should Be Granted
          As To Plaintiff's Purported *Monell* And Failure To Train Claims Against
          The County and Sheriff Downey .........................................................................7

     C.     Summary Judgment Should Be Granted As To Plaintiff's Interference With
          Familial Relationship Claim On The Ground That The County Defendants
          Were Not Deliberately Indifferent To Plaintiff's Rights .........................................8

          1.   Interference With Familial Relationship Claims Are Governed By A
              Subjective Deliberate Indifference Standard, Irrespective Of The Holding
              In *Castro* ....................................................................................................8

          2.   Assuming, *Arguendo*, That An Objective Standard Applies To Plaintiff's
              Interference With Familial Relationship Claim, Summary Judgment
              Should Be Granted ......................................................................................11

III.    CONCLUSION............................................................................................12

i

# **TABLE OF AUTHORITIES**

*Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998) ...................................................... 8, *passim*

*Castro v. Cty of Los Angeles*, --F.3d--, 2016 WL 4268955 ............................... 1, *passim*

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)..............................................9, 10

*Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir.1991) ..........................................9

*Graham v. Connor*, 490 U.S. 386 (1989) ......................................................................4

*Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)................................................2, 3, 10

*Moreland v. Las Vegas Metropolitan. Police Dept.*, 159 F.3d 365 (1998) ........................9, 10, 11

*Rakas v. Illinois*, 439 U.S. 128 (1978)...........................................................................9

*Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323 (9th Cir. 1995) ...................................4

*Scott v. Harris*, 550 U.S. 372 (2007) .............................................................................5

*Shelley v. Kraemer*, 334 U.S. 1 (1948) .....................................................................9, 11

*Van Ort v. Estate of Michael Stanewich*, 92 F.3d 831 (9th Cir. 1996).............................7

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ........................................................5

_____
SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

I. __INTRODUCTION__

Following the Ninth Circuit's decision in *Castro v. Cty of Los Angeles*, --F.3d--, 2016 WL 4268955, the Court required further briefing with respect to the following three issues only: (1) whether summary judgment is appropriate as to the §1983 claims brought against the County defendants for violation of Borges' Fourteenth Amendment rights (i.e. Claim Four and Claim Six) under the Castro standard; (2) whether the Castro standard should apply to plaintiff's interference with familial relationship claim under the Fourteenth Amendment; and (3) assuming the Castro standard applies, whether summary judgment should be granted.

The admissible evidence establishes that, although the County defendants made an intentional decision to place Borges into the sobering cell and to follow lawful County policies with respect to having a medical evaluation performed and monitoring Borges, the risks posed to him were not "objectively" serious at any time prior to his death. That is to say that the County defendants did not act with a mental state "akin to reckless disregard" in evaluating the risk posed to Borges. The undisputed evidence establishes that correctional staff perceived Borges' presentation as intoxicated, but his behavior was less egregious than during prior contacts, he did not inform anyone of any particular risk, no information indicating a serious risk was conveyed to correctional staff by the arresting officers, nor would a reasonable correctional officer have concluded that Borges' presentation required anything other than a medical screening by contract medical personnel. Even assuming, *arguendo*, that the risk of harm was objectively "sufficiently serious," the undisputed evidence establishes that the County defendants took reasonable available measures to abate that risk in contacting contract medical staff and having a medical screening performed. Ultimately, the medical screening resulted in further confirmation that the risk was not objectively serious, as the nurse, a trained medical professional, did not perceive the need to summon any greater level of care. Finally, the County defendants did not cause Borges' injuries. The evidence establishes that Borges' death was caused by his ingestion of a lethal dose of methamphetamines and the decision to not refer Borges to any greater level of care was made by the contract nurse, not correctional staff.

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

A parent's interference with familial relationship claim is distinct from a pretrial detainee's denial of medical care claim. Ninth Circuit precedent holds that a subjective deliberate indifference standard applies to a parent's interference with familial relationship claim. This standard is not altered by the United States Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015) or the Ninth Circuit's holding in *Castro*, which only articulated an objective standard for "deliberate indifference" in analyzing certain claims arising from violations of a pretrial detainee's constitutional rights.

Even assuming, *arguendo*, that the *Castro* analysis applies to plaintiff's interference with familial relationship claim, summary judgment should be granted for the same reasons that summary judgment should be granted as to Borges' denial of medical care claim.

## II. LEGAL DISCUSSION

### A. Summary Judgment Should Be Granted As To Plaintiff's Fourteenth Amendment Denial Of Medical Care Claims Under The Deliberate Indifference Standard Articulated In *Castro*.

Assuming that the standard articulated in *Castro* applicable to failure-to-protect claims asserted by pretrial detainees applies to Borges' denial of medical care claim, summary judgment should be granted to the County Defendants.

In its recent holding in *Castro*, the Ninth Circuit articulated the following standard for analyzing deliberate indifference in failure-to-protect claims:

1. The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

2. Those conditions put the plaintiff at substantial risk of suffering serious harm;

3. The defendant did not take reasonable available measure to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

4. By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro*, 2016 WL 4268955 *7.

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

1        1.  <u>Correctional Personnel Made The Intentional Decision to Place Borges In The Sobering Cell, Summon A Medical Screening And Monitor Him On Video, By Listening To Him and Performing Cell Checks At 15 Minute Intervals.</u>

The Ninth Circuit in *Castro* instructs that in failure-to-protect claims it must be demonstrated that the "officer's conduct with respect to the plaintiff was intentional." *Castro*, 2016 WL 4268955 *6. Here, there is no dispute that correctional officers intentionally placed Borges in the sobering cell, summoned a medical screening and monitored him by cell checks at 15-minute intervals, through video and by hearing him in the cell.

      2.  <u>The Placement Of Borges In The Sobering Cell, Summoning A Medical Screening And Monitoring Him, Did Not Place Decedent At Substantial Risk Of Suffering Serious Harm</u>.

The competent and admissible evidence establishes that Borges would have died regardless of him being placed in the sobering cell or other measures taken by correctional personnel to monitor him and refer him for a medical screening. Defense expert Dr. DiMaio explains that Borges ingested a lethal dose of methamphetamine that is toxic to the heart and he could not recover from the cardiac insult of what was consumed. (DiMaio, 30:5–25; 31:1–7.)

Although plaintiff's medical expert believes that he could have saved plaintiff at his emergency room, Dr. Gustin acknowledges that death was caused by the Borges' consumption of methamphetamine. (Deposition of Gustin ["Gustin"], attached to the Supp. Dec. of Delaney as *Exhibit I,* 64:22–25.) Dr. Gustin also concedes that there is no antidote for methamphetamine (such as Narcan for Heroin) and that this is *not* a case where Borges was a "stuffer," i.e. where one consumes a large quantity of drugs in front of officers and may be treated accordingly. (Gustin, 67:11–12; 27:7–25; 28:1–11.)

      3.  <u>Even Assuming, *Arguendo*, That The Conditions Put Plaintiff At Substantial Risk, A Reasonable Officer In The Circumstances Would Not Have Appreciated The High Degree Of Risk Involved And The County Defendants, Otherwise, Took Reasonable Available Measure To Abate Any Risk To Decedent</u>.

With respect to this element, the Ninth Circuit states that, although "[u]nder *Kingsley*, a pretrial detainee need not prove those subjective elements about the officer's actual awareness of the level of risk…the Supreme Court has instructed that 'mere lack of due care by a state official' does not 'deprive an individual of life, liberty, or property under the Fourteenth Amendment. [Citations]" *Castro*, 2016 WL 4268955 *7. "Thus, the test to be applied under

3

*Kingsley* must require a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard." *Ibid.* The Ninth Circuit also instructs that defendant's conduct must be "objectively reasonable, a test that will necessarily turn on the facts and circumstances of each particular case. [Citations]." *Castro*, 2016 WL 4268955 *7  (internal quotations omitted).

Here, although Borges was perceived to be intoxicated, it is undisputed that he did not disclose what/how much of any drug he had ingested. It is also undisputed that this information was not known to the arresting officers, nor was any such information conveyed to correctional staff by the arresting officers. (Plaintiff's Additional Material Facts ["AMF"] 232 and Opposition, 8:14–15.) Further, arresting Eureka Police Officer, Stelzig, stated to jail staff that Borges did not have an injury or obvious illness. (AMF 146 and Opposition, 6:11–12.) There is no evidence any such information was conveyed by any other law enforcement personnel to correctional personnel.

It is also undisputed that Borges was familiar to several of the involved officers due to prior contacts at the jail.[1] His presentation, however, was not as extreme as it had been on prior occasions. Although he was passively resistant, had difficulty following directions and demonstrated erratic behavior, his presentation (especially when compared to prior contacts between Borges and jail personnel) was not sufficiently severe to alert reasonable non-medical correctional personnel, especially those possessing the same knowledge and experience with Borges as the officers here, of a serious health risk requiring any greater care than summoning CFMG for a medical screening.[2] Further it is undisputed that no correctional defendant perceived that Borges presented with an emergency medical condition.

---

[1] Plaintiff claims that this fact is refuted, but points to no evidence in support of this contention. (See, Reply brief filed on April 19, 2016 (Docket No. 94), 10:15–24.

[2] As discussed in defendant's Reply brief, plaintiff's objection to evidence regarding prior contacts with Borges on relevance grounds is misplaced. (Reply, 10:18–24.) The information gleaned from prior contacts with Borges is relevant to "establish the facts and circumstances known to the officers" during the incident in question. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995); *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

Plaintiff attempts to create disputed facts on each of these points. The analysis of plaintiff's assertions is discussed in greater detail in defendants' Reply Brief filed on April 19, 2016 (Docket No. 94). In summary, plaintiff's purported "evidence" does not create a disputed fact because the evidence is essentially mischaracterizations of the record. Where a party's version of the events is blatantly contradicted by the record, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007); see also *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (citing *Scott*, 550 U.S. at 380).

For example, plaintiff contends that the audio and video taken while Borges was in the back of the patrol car in the Sally port of the jail depicts Borges' "condition worsening," to the point where he was only able to mumble incoherently in response to Goodale's, question: "You gonna come out and sit in the chair and be cool?" (Reply, 5:15–24.) This misconstrues the audio and video evidence, which clearly depicts audible and coherent responses to questioning by Goodale. (Reply, 5:5–24.)  Plaintiff's nursing expert further concedes that the ability to converse in this fashion would be inconsistent with Borges being disoriented. (Reply, n. 2.)

Plaintiff's assertions that Borges' conduct on the video is indicative of a person requiring emergency medical care is also refuted by the objective record. Borges is depicted on video walking unassisted (and without apparent difficulty) from the patrol car to the jail intake door, and complying with instructions by Stelzig to sit down, which was all accomplished by Borges while wearing handcuffs behind his back. (Reply, 5:25–6:3.)  The video in the pat–down area objectively depicts someone who is under the influence but not in any significant distress—a common observation for jail personnel and particularly with respect to Borges. (Reply, 6:4–15.)

Plaintiff also misconstrues the deposition testimony of various officers in an effort to assert that correctional personnel should have observed Borges sweating profusely, completely disoriented, not able to follow simple commands or answer questions, and unbalanced. (Reply, 6:16–8:15.) The undisputed evidence demonstrates that Borges did not refuse to answer any questions by correctional personnel and, in particular, responded to medical questions by correctional personnel. (Reply, 6:19–7:2 and 7:19–8:15.) Further, no jail staff observed Borges

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

"sweating profusely" nor was any information conveyed to correctional personnel for them to reasonably infer that any dampness on Borges' clothing was sweat. (Reply, 7:3–18.) Borges was not unbalanced because of his level of intoxication as asserted by plaintiff, nor did he need to be assisted with balance as he was walked to the sobering cell. (Reply, 7:14–18 and 8:16–24.)

There is no admissible evidence that Borges had a head injury or that he was experiencing excited delirium. (Reply, 12:20–13:6.)

Contrary to plaintiff's assertions, objectively there is nothing in the video demonstrating a "rapid deterioration" by Borges while in the sobering cell. (Reply, 8:25–9:26.) At most, Borges is depicted as acting out in the sobering cell as he had done on multiple prior occasions and thereafter becoming more passive, apparently falling asleep, which is consistent with those in the jail who have ingested methamphetamines. (Reply, 9:4–15.)

Plaintiff's assertion that Borges made his last movement that was detectable by the camera in the sobering cell at 15:16:32, nearly 45 minutes prior to noting that Borges was nonresponsive, is patently incorrect, as is plaintiff's assertion that the observations during the cell checks by correctional personnel at approximately 15:19 (Swim), 15:31 (Rogers), and 15:45 (Swim) hours, is disputed. (Reply, 9:16–26.) Plaintiff's contention is directly refuted by the objective video evidence which clearly depicts Borges moving his head about at 15:17:56. (Reply, 9:20–22.) Further, there is no evidence that slight movements, such as breathing as observed by each of the correctional officers during cell checks at 15:19, 15:31 and 15:45 hours, are detectable on the low resolution video. (Reply, 9:22–26.)

Finally, plaintiff also misconstrues the time spent by correctional personnel in observing Borges in the sobering cell. (Reply, 9:27–10:9.) This is significant because if respirations were occurring at the usual rate of 12 to 20 times per minute, it is certain at the higher end that a respiration was visible and more likely than not at the lower end as a matter of simple arithmetic.[3] (Reply, 10:6–9.)

_____

[3] Even if it is presumed that any correctional officer knew of Borges' diagnosed mental health issues, there is no evidence that his mental health diagnosis played any role in the issues presented in this case other than to further explain why jail staff did not view his presentation on the date of the incident as significantly different from prior contacts. (Reply, 10:25–11:2.)

_____

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

There simply was nothing about Borges' presentation or the information that correctional personnel learned from the arresting officer or Borges, himself, that alerted or reasonably should have alerted correctional personnel that Borges had any substantial risk of suffering serious harm or otherwise requiring anything beyond a CFMG medical screening. The facts are further undisputed that CFMG medical personnel were not only promptly contacted by correctional staff, as required to satisfy any "objective" or "subjective" standard under either the Fourth or Fourteenth amendments, but that CFMG performed the medical screening CFMG deemed appropriate, concluding that no further medical care was warranted.

Based on the foregoing, defendants' motion for summary judgment should be granted.

3.   The County Defendant's Conduct Did Not Cause Borges' Death.

As indicated above, the competent and admissible evidence establishes that Borges would have died irrespective of the conduct of the County Defendants. Moreover, it is undisputed that the decision not to elevate Borges' level of care was ultimately made by a trained medical professional, not any of the County defendants.

**B.     As There Is No Constitutional Violation Or Any Unconstitutional Policy, Practice Or Training, Judgment As A Matter Of Law Should Be Granted As To Plaintiff's Purported *Monell* And Failure To Train Claims Against The County and Sheriff Downey**.

To establish that a municipality is responsible for a constitutional violation, plaintiff must demonstrate that: (1) that the plaintiff possessed a constitutional right of which he or she was deprived; (2) that the municipality had a policy; (3) that this policy amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) that the policy was the moving force behind the constitutional violation. *Van Ort v. Estate of Michael Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). The Ninth Circuit in Castro explains that "deliberate indifference" in the context of assessing *Monell* liability is an objective standard. *Castro*, 2016 WL 4268955 *11.

Here, County is not liable under a *Monell* theory on the ground that no underlying constitutional deprivation occurred. Even assuming, *arguendo*, that there was a violation, no credible evidence has been advanced that any relevant County jail policies or established practices did not meet constitutional standards. Plaintiff's assertion that the County's policies

and practices were inadequate is based on an improper read and recitation of such policies. (Reply, 15:6–12 and 16:17–19:7.)

To the contrary, defense expert, Lawrence, confirms that with respect to medical services, the Humboldt County Correctional Facility remains compliant. (Declaration of Philip Lawrence ["Dec. of Lawrence"].) The evidence submitted by plaintiff either does not dispute this fact or is inadmissible. (Reply,16:17–19:7.)

Moreover, the County and Downey had policies and training to ensure jail staff would recognize signs of medical distress, call medical staff when appropriate, and adequately monitor arrestees in sobering cells. (Reply,18:3–28.) Each of the involved correctional officers was compliant with required training. (Reply, 18:10–28.) Plaintiff's assertion to the contrary is based on a mischaracterization of the record. (Reply, 18:10–28.)

Contrary to plaintiff's position, there is no evidence that Sheriff Downey had any information or knowledge that a constitutional violation occurred, that any policies or trainings were inadequate, nor is there any information that he ratified any constitutional violation or knew about any purportedly deficient policy.

Based on the foregoing, summary judgment should be granted in favor of the County and Sheriff Downey.

**C.**  **Summary Judgment Should Be Granted As To Plaintiff's Interference With Familial Relationship Claim On The Ground That The County Defendants Were Not Deliberately Indifferent To Plaintiff's Rights.**

    1.  Interference With Familial Relationship Claims Are Governed By A Subjective Deliberate Indifference Standard, Irrespective Of The Holding In *Castro*.

The Ninth Circuit's *en banc* decision in *Castro* in no way alters the subjective deliberate indifference standard used in analyzing an interference with a familial relationship claim where law enforcement has time to deliberate.

Although Borges' denial of medical care claim and plaintiff's interference with familial relationship claim arise under the Fourteenth Amendment, a parent's interference with familial relationship claim is a distinct claim. See, *Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir. 1998), overruled by statute on other grounds (distinguishing interference with familial relationship

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

claim from Fourth Amendment claims on the basis that the former derives from a parent's constitutionally protected liberty interest under the Fourteenth Amendment in the companionship and society of his or her child); and *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991), cert. denied, 506 U.S. 972, 113 S.Ct. 460 (1992) (same).

In analyzing the standards which apply to an interference with familial relationship claim, the Ninth Circuit expressly rejected the application of an objective standard. *Byrd*, 137 F.3d at 1134. In so holding, the Ninth Circuit determined that analyzing the claim under the same standard as the underlying Fourth Amendment violation would, in essence, be a vicarious assertion of the decedent's Fourth Amendment rights in violation of the admonition articulated in *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). *Byrd* at 1134.

In *Rakas*, the United States Supreme Court stated that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas,* 439 U.S. at 133–34. The same holding and admonition applies to Fourteenth Amendment due process claims. See, *Shelley v. Kraemer*, 334 U.S. 1, 22, (1948) (The rights created by the due process clause of the Fourteenth Amendment are "by its terms, guaranteed to the individual. The rights established are personal rights.")

After *Byrd*, the United States Supreme Court issued its decision in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). The Supreme Court decided the standard applicable to a due process claim brought by family members of one who is injured by law enforcement was "shocks the conscience." *Id*. Further, the Court held that under circumstances where a parent of a decedent whose death arose from the unintentional killing by a law enforcement officer and where there was no opportunity for the officer to deliberate, "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id*.at 836.

In *Moreland v. Las Vegas Metropolitan. Police Dept.*, 159 F.3d 365 (1998), the Ninth Circuit clarified the application of the Court's holding in *Lewis* in light of the Ninth Circuit's prior holding in *Byrd*. Specifically, the Ninth Circuit determined that the state of mind which shocks the conscience depends on the circumstances of a particular case. *Moreland*, 159 F.3d at 372–73.

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

Where law enforcement officers are forced to react to sudden situations with haste and under pressure without the opportunity to fully consider the potential consequences of their conduct, their conduct shocks the conscience only when it is motivated by a purpose to harm. *Moreland*, 159 F.3d at 372, citing *Lewis*, 523 U.S. at 852–53. However, if law enforcement is responding to a circumstance in which there is time to fully consider potential consequences, then conduct will shock the conscience if it is deliberately indifferent to the plaintiffs' rights. *Moreland*, 159 F.3d at 373; *Byrd*, 137 F.3d at 1133–34.

As the Ninth Circuit's *en banc* decision in *Castro* quite obviously does not bear on the "purpose to harm" standard, the issue raised by the District Court centers on whether an objective or subjective deliberate indifference standard should apply to an interference with familial relationship claim where officers had an opportunity to deliberate. It is important to recognize that the decision in *Castro* is limited to only Fourteenth Amendment failure-to-protect claims asserted by (or on behalf of) pretrial detainees. *Castro*, 2016 WL 4268955 *7.[4] The decision by the Ninth Circuit to depart from a subjective standard in analyzing failure-to-protect claims is derived from the Supreme Court's recent decision in *Kingsley*. As acknowledged by the Ninth Circuit in *Castro*, *Kingsley* "rejected the notion that there exists a single 'deliberate indifference' standard applicable to *all* §1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Castro*, 2016 WL 4268955 *5. Neither case held that the deliberate indifference standard applicable to other types of Fourteenth Amendment claims, such as an interference with familial relations, should be analyzed under an objective rather than subjective standard. As a result, the Ninth Circuit's decision in *Byrd*, rejecting the application of an objective standard to this type of claim remains the law.

Any assertion that an objective standard should apply because the interference with familial relationship claim asserted here is derivative or otherwise arises out of the circumstances of Borges' pretrial detention would ignore the distinct right being asserted by plaintiff. Such a claim

---

[4] Based on the limited holding of *Castro* as applying only to failure-to-protect claims asserted by pretrial detainees, the County defendants assert that *Castro* does not overrule prior Ninth Circuit precedent analyzing denial of medical care claims under a subjective deliberate indifference standard. If authorized by the Court, additional briefing in this regard will be provided.

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

is attendant to all constitutional claims which result in the deprivation of a familial relationship, regardless of whether the underlying violation arose on the streets during the course of an arrest or in the pre-trial custodial setting. See, *Moreland*, 159 F.3d at 371–72 (underlying claim was an alleged excessive force claim violation of the decedent's Fourth Amendment rights.) To apply an objective standard to analyze a plaintiff's interference with familial relations claim under circumstances where, for example, excessive force occurred would directly violate the Ninth Circuit's holding in *Byrd*.

The same is true here if an objective standard were applied to analyze deliberate indifference in the context of both plaintiff's interference with familial relationship claim and the underlying denial of medical care claim asserted on behalf of Borges. Simply stated, plaintiff would, "in essence…be vicariously asserting" Borges' Fourteenth Amendment right, in violation of the admonition in *Shelley*. See *Byrd*, 137 F.3d at 1134.

Based on the foregoing, a subjective deliberate indifference standard continues to apply to plaintiff's interference with familial relationship claim.

      2.    <u>Assuming, *Arguendo*, That An Objective Standard Applies To Plaintiff's Interference With Familial Relationship Claim, Summary Judgment Should Be Granted.</u>

As discussed above, the individual defendants did not act with reckless disregard with respect to their assessment of the risk posed by placing Borges in the sobering cell. The severity of Borges' medical needs (i.e. that he had consumed a fatal dose of methamphetamines) was unknown to the County defendants and, as such, would have been unknown to reasonable correctional officers. The arresting officers did not provide any information to the correctional personnel which should have alerted them to Borges' condition, nor did Borges inform correctional personnel of any condition that posed a serious risk. Correctional personnel were not alerted to a significant risk by Borges' presentation at the jail. Although he was obviously intoxicated, he complied with commands and acted in accord with how he had presented on previous occasions, if not less aggressively. Also the trained medical personnel who performed the medical screening of Borges while he was in the sobering cell did not perceive the need to summon any greater level of care. Correctional staff took reasonable available measures to abate

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016

any health risk to Borges by summoning the contract nurse to perform the medical screening. Borges was also monitored in person in the cell every 15 minutes pursuant to County policy and otherwise by video. Finally, the conduct of the correctional defendants did not cause Borges' death. His death resulted from his consumption of a lethal dose of methamphetamines and the decision not to further elevate his level of care was made by contract medical personnel, not correctional defendants.

Based on the foregoing, defendants' motion for summary judgment should be granted as to plaintiff's interference with familial relationship claim.

## III.   **CONCLUSION**

For the aforementioned reasons, defendants, and each of them, respectfully submit that each defendant is entitled to summary judgment, as to each cause of action.

DATED:  September 12, 2016          MITCHELL, BRISSO, DELANEY & VRIEZE, LLP

By:   */s/ Nancy K. Delaney*
      Nancy K. Delaney/Nicholas R. Kloeppel
      Attorneys for County Defendants

SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S ORDER, ENTERED AUGUST 31, 2016