UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHANY BORGES,

Plaintiff,

v.

CITY OF EUREKA, ET AL.,

Defendants.

Case No. 15-cv-00846-YGR

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION TO EXCLUDE

Re: Dkt. Nos. 67, 72

Plaintiff is the mother of decedent Daren Borges, who died as a result of acute methamphetamine intoxication while detained in a sobering cell of the Humboldt County Correctional Facility (the "County jail") on June 13, 2014. Plaintiff brings the following: (1) section 1983 denial of medical care claim under the Fourth and Fourteenth Amendments against individual arresting City of Eureka police officers ("City officers") and detaining Humboldt County correctional officers ("County officers"); (2) section 1983 interference with familial relationship claim under the Fourteenth Amendment against City and County officers; (3) section 1983 municipal and supervisory liability claim against the City of Eureka ("City"), Humboldt County ("County"), and Sheriff Downey; (4) Americans with Disabilities Act and Rehabilitation Act claims for failure to provide reasonable accommodations against the City and County; and (5) state law claims for violation of California Government Code section 845.6 and negligence for failing to summon medical care against all defendants. Presently pending before the Court are (1) Defendants' Motion for Summary Judgment (Dkt. No. 67) and (2) Defendants' Motion to Exclude Expert Testimony (Dkt. No. 72).

United States District Court
Northern District of California

The Court having carefully considered the papers, pleadings, admissible evidence, and arguments of the parties **ORDERS** as follows:

(A)     Defendants' Motion to Exclude Expert Testimony is **DENIED.**

(B)     Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.   Defendants' motion for summary judgment as to the Fourth Amendment unreasonable seizure claim against the City officers is **GRANTED.**

2.   Plaintiff's Fourteenth Amendment claim against City officers for denial of medical care is **DISMISSED AS MOOT.**

3.   Defendants' motion for summary judgment as to the Fourth Amendment denial of medical care claim for City officers is **GRANTED**.

4.   Defendants' motion for summary judgment as to the Fourth and Fourteenth Amendment denial of medical care claims against the County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

5.   Defendants' motion for summary judgment as to the Fourth and Fourteenth Amendment denial of medical care claims against County officer Corporal Basler is **GRANTED**.

6.   Defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against the City officers is **GRANTED**.

7.   Defendants' motion for summary judgment as to Fourteenth Amendment familial interference claim against County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

8.   Defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against County officer Corporal Basler is **GRANTED**.

9.   Defendants' motion for summary judgment as to the section 1983 claim for municipal and supervisory liability against the City is **GRANTED**.

10. Defendants' motion for summary judgment as to the section 1983 claim for municipal and supervisory liability against the County is **DENIED**.

11. Defendants' motion for summary judgment as to the section 1983 claim for municipal and supervisory liability against Sheriff Downey is **DENIED**.

12. Defendants' motion for summary judgment as to the Americans with Disabilities Act and Rehabilitation Act claims against the City and County is **GRANTED**.

13. Defendants' motion for summary judgment as to the section 845.6 claim against the County and County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

14. Defendants' motion for summary judgment as to the section 845.6 claim against County officer Corporal Basler is **GRANTED**.

15. Defendants' motion for summary judgment as to the section 845.6 claim against the City and City officers is **GRANTED.**

16. Defendants' motion for summary judgment as to the negligence claim against the County and County officers is **GRANTED.**

17. Defendants' motion for summary judgment as to the negligence claim against the City and City officers is **GRANTED.**

## I.   BACKGROUND

On June 13, 2014, at approximately 2:00 p.m., City of Eureka police officers received and responded to a call concerning a male on a city sidewalk who appeared to be under the influence and was taking off his clothes. (Dkt. No. 79 at AMF 1.) Upon arrival at the city sidewalk, Officer Michael Stelzig saw that Borges was displaying what Stelzig understood to be signs of stimulant intoxication, namely, sweating, glassy eyes with a blank stare, uncontrollable body movements, and mumbling. (*Id.* at AMF 3.) Officer Stelzig arrested Borges for public intoxication. Officer Bryon Franco arrived at the scene shortly after Officer Stelzig, and the two of them agreed with one another that Borges did not need to be transported to a hospital emergency room, but could instead be taken directly to the County jail. (*Id.* at AMF 17.)

3

United States District Court
Northern District of California

1    Upon arrival at the County jail, Officer Stelzig informed the jail staff that Borges was

2  "methed out.". (*Id*. at 19.) Meanwhile, Borges remained in the back seat of Officer Stelzig's patrol

3  car, where—unseen by Officer Stelzig—he banged his head on the door/window. (*Id*. at AMF 22.)

4    Once inside the County jail, Corporal Teri Bittner and Officer David Swim began the

5  initial pat-down of Borges. (*See id*. at AMF 201.) Due to Borges's resistance and unpredictability,

6  an additional officer, Corporal Tim Hammer, was asked to assist. (*Id*. at AMF 30.) Supervising

7  Correctional Deputy Tim Hershberger was not directly involved in the pre-booking of Borges, but

8  plaintiff presents evidence that he observed Borges and was able to hear the encounter from his

9  desk in the processing area. (*Id*. at AMF 33.)

10    If a detainee is "uncooperative" at the County jail, the County jail's practice requires that

11  the medical evaluation be postponed until after the detainee is placed in a sobering cell. (*Id*. at

12  AMF 38.) Borges was thus placed in a sobering cell at 2:40 p.m. by Officer Swim and Corporals

13  Bittner and Hammer. (*Id*. at AMF 41.) Deputy Hershberger was also present. (*Id*. at AMF 34.)

14  After Borges was placed in the sobering cell, a nurse from CFMG, the medical group with whom

15  the County contracts to provide medical services, came to evaluate him approximately 20 minutes

16  later, at 3:00 p.m. (*Id*. at AMF 45.) The nurse did not go inside the sobering cell because Borges

17  was "swinging his shirt around and appeared agitated." (Dkt. No. 67 at 15.) In general, the medical

18  staff will not go inside the sobering cell to examine the inmate and take his vital signs if he is

19  uncooperative. (*See id*. at 14.)

20    Over the next hour, County officers performed five sobering cell safety checks.[1] (*See id*. at

21  16-17; Dkt. No. 78 at 24-29.) Some of the County officers also observed a monitor in the County

22  jail processing area, Dkt. No. 79 at AMF 375, which contained a live feed of the sobering cell, the

23  video recording of which has since been preserved and is part of the summary judgment record,

24  Dkt. No. 79-21. The parties disagree as to what one can observe on the video. Plaintiff argues that

25  the video evidences that the County officers saw "Borges take his clothes off, soak them in toilet

26

27    [1] County officers also performed one sobering cell safety check prior to the 3:00 p.m.
28  CFMG nurse's evaluation.

4

water, fling them around, yell, roll around on the floor, and spin in circles on the floor." (Dkt. No. 78 at 25.) Plaintiff further describes the video as showing that Borges "flopped around on the cell floor naked, fanned himself to cool off, became more agitated and distressed, held his head in his hands as if crying, washed his groin with toilet-water soaked clothing, kicked the privacy wall, assumed a face down position with his legs trembling and twitching, then went to his knees doubled over looking sick." (*Id.*) Plaintiff argues that Borges's "highly agitated and bizarre behavior" was consistent with excited delirium, a symptom of a methamphetamine overdose that requires immediate medical attention. (*See id.*) Defendants do not entirely dispute this description of Borges's behavior, other than to argue that the sobering cell video does not actually show a "rapid deterioration by Borges," and to state that there is no "evidence or reasonable inference that can be drawn that Borges was soaking his clothes in the toilet to "cool himself off." (Dkt. No. 94 at 8-9.)

The parties agree that eventually Borges became more passive. Plaintiff claims Borges's last movement detectable by the sobering cell camera was at 3:16 p.m. (Dkt. No. 78 at 27.) Defendants counter that the video shows Borges moving his head at about 3:17 p.m. (Dkt. No. 94 at 13.) Defendants also argue that the County officers observed Borges breathing, as they indicated on the sobering cell log, even though this is not observable from the video. [2] (*See id.*) Finally, the parties agree that, at 4:00 p.m., Corporal Hammer performed a final sobering cell safety check and found that Borges did not appear to be breathing. (Dkt. No. 67 at 16; Dkt. No. 78 at 29.)

At that point, the County officers initiated emergency medical care, but Borges did not have an observable pulse. (Dkt. No. 67 at 17.) Borges was transported from the jail to the hospital

---

[2] Between 3:17 p.m. and 4:00 p.m., County officers performed three safety checks that plaintiff contends were inaccurate to the extent they described Borges as breathing in the sobering cell log. (Dkt. No. 78 at 28-29.) Plaintiff argues that the checks were not long enough for the County officers to be able to tell whether or not Borges was breathing, since they ranged in time from just 1 to 2.6 seconds. (*See id.* at 28.) Defendants counter that two of the three checks were not 2.6 and 2.3 seconds, as plaintiff alleges, but actually 3.238 and 3.169 seconds, respectively. (Dkt. No. 94 at 14.) Defendants also argue that "[i]f respirations are occurring at the usual rate of 12 to 20 times per minute, it is certain at the higher end that a respiration was visible and more likely than not at the lower end as a matter of simple arithmetic." (*Id.*)

by emergency medical personnel at approximately 4:16 p.m. (*Id.*) Borges died as a result of acute methamphetamine intoxication. (Dkt. No. 79 at AMF 445.) Plaintiff argues that Borges more than likely would have survived with proper medical treatment if he had been taken to the hospital at any point prior to 3:45 p.m. (Dkt. No. 78 at 29.)

## II.    EVIDENTIARY ISSUES

Defendants seek to exclude the following opinions of plaintiff's police and jail practices expert, Richard Lichten: (1) "opinions based upon the subjective interpretation or misinterpretation of video of the decedent," (2) "opinions as to any policy for which there is no foundation that the policy is that of the agency or entity to which it is attributed," and (3) "the absence of any policy with respect to a monitoring system that is not required at the Humboldt County Correctional Facility." (Dkt. No. 72 at 5.) The Court addresses each in turn.

### A.  Lichten's Opinions Based Upon the Sobering Cell Video

Defendants do not dispute that Lichten is qualified to offer an expert opinion as to police policies and practices, or to opine on what reasonable officers would do in a given hypothetical situation. However, they claim that because Lichten "has no purported expertise in forensic video analysis," he is not "qualified to conclude from the video what could be observed in real time by any police officer or correctional officer compared to what is captured on the video." (*Id.* at 3.) However, plaintiff does not offer Lichten's opinion to conclude what any of the County officers observed in real-time. Rather, Lichten simply included a recitation of the facts in his Rule 26 report that includes a description of what he observed on the video recordings in order to lay a proper foundation for his opinions on police and jail practices, and what reasonable officers would have done in response to the facts as he describes them. If defendants believe Lichten has "misdescribed" what is depicted on the video, then they will have the opportunity to cross-examine him regarding the factual basis for his opinions, and to offer their own expert witness to interpret the events on the video. Defendants' "recourse is not exclusion of the testimony, but, rather, refutation of it by cross-examination and by the testimony of [his] own expert witnesses." *Humetrix v. Gemplus*, 268 F.3d 910, 919 (9th Cir. 2001).

1    Defendants' motion to exclude Lichten's opinion based upon what he observed in the

2    video is therefore **DENIED.**

3    **B.  Lichten's Opinion Regarding Breach of County Policy**

4    Defendants argue that Lichten improperly concluded that a policy marked "Humboldt

5    County Adult Policy and Procedure Manual" was the policy of the Humboldt County Correctional

6    Facility, instead of CFMG, the medical group providing services to the County jail. (Dkt. No. 72

7    at 4.) Based on this, defendants argue that Lichten incorrectly concluded that the County policy

8    was breached because medical staff did not see Borges prior to being admitted to the sobering cell.

9    Defendants claim that the County policy instead requires only that the inmate be seen within one

10   hour of being placed in the sobering cell, and that the policy was therefore not breached in this

11   case. Once again, defendants' "recourse is not exclusion of the testimony, but, rather, refutation of

12   it by cross-examination and by the testimony of [their] own expert witnesses." *Humetrix*, 268 F.3d

13   at 919. The jury will then decide whether the County's policy was breached.

14   Defendants' motion to exclude Lichten's opinion that County policy was breached based

15   on the "Humboldt County Adult Policy and Procedure Manual" is therefore **DENIED.**

16   **C.  Lichten's Opinion Regarding the Sobering Cell Monitoring System**

17   Defendants move to exclude Lichten's opinion that the County is "neglectful for failing to

18   have adequate policies regarding an audio monitoring system in the subject sobering cell" on the

19   basis that "there is no foundation that such a system is required in the subject sobering cell." (Dkt.

20   No. 72 at 5.) Regardless of whether a "requirement" to use a monitoring system in the sobering

21   cell existed, Lichten is entitled to offer his expert opinion as to what types of measures a

22   reasonable municipality would have adopted with regard to the monitoring of the sobering cell.

23   The fact that a state regulation may not require audio monitoring in the sobering cell is something

24   the jury may consider when deciding whether to accept Lichten's conclusion as to the sufficiency

25   of the steps the County took to monitor the sobering cell. Further, as stated previously, defendants

26   can present their own expert testimony on this issue.

27   Defendants' motion to exclude Lichten's opinion that the County was neglectful for not

28   having a monitoring system in the sobering cell is therefore **DENIED.**

United States District Court
Northern District of California

### III.   APPLICABLE LAW ON SUMMARY JUDGMENT

Summary judgment is proper if the pleadings and evidence in the record "show that there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Any party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. *Id.* at 248–49.

Defendants, in their motions, have the burden of producing evidence negating an essential element of each claim on which they seek judgment or showing that plaintiff cannot produce evidence sufficient to satisfy their burden of proof at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir. 2000). If defendants meet that burden, plaintiff may defeat summary judgment by showing, through admissible evidence, that a material factual dispute exists. *California v.Campbell.* 138 F.3d 772, 780 (9th Cir. 1998). When deciding a summary judgment motion, courts must view the evidence in the light most favorable to the nonmoving parties and draw all justifiable inferences in their favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011). Summary judgment is rarely appropriate when credibility is at issue. *SEC v. M & A West. Inc.,* 538 F.3d 1043, 1055 (9th Cir. 2008). "Where the facts are disputed, their resolution and determinations of credibility 'are manifestly the province of a jury.'" *Wall v. County of Orange,* 364 F.3d 1107, 1110–11 (9th Cir. 2004) (quoting *Santos v. Gates,* 287 F.3d 846, 852 (9th Cir. 2002)).

### IV.   ANALYSIS

Plaintiff brings the following: (1) section 1983 denial of medical care claim under the Fourth and Fourteenth Amendments against individual arresting City officers and detaining County officers; (2) section 1983 interference with familial relationship claim under the Fourteenth Amendment against City and County officers; (3) section 1983 municipal and

United States District Court
Northern District of California

supervisory liability claim against the City, the County, and Sheriff Downey; (4) Americans with Disabilities Act and Rehabilitation Act claims for failure to provide reasonable accommodations against the City and County; and (5) state law claims for violation of California Government Code section 845.6 and negligence for failing to summon medical care against all defendants. The analysis for each follows:

### A.   Section 1983 Claims Against Individual Defendants

To prevail on a section 1983 claim against individual officers, a plaintiff must show that the officer, acting under color of state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted). However, officers sued in an individual capacity may assert a defense based on qualified immunity, which precludes liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions, (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citations omitted).

A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Although the ultimate burden is upon plaintiff to show that the constitutional right was clearly established, on summary judgment the court must resolve all factual disputes and draw all reasonable inferences in her favor. *See Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1110 (9th Cir. 2011). "If a genuine issue of material fact exists that prevents a determination of qualified immunity at summary judgment, the case must proceed to trial." *Serrano v. Francis,* 345 F.3d 1071, 1077 (9th Cir. 2003) (citation omitted).

Plaintiff asserts that individual officers violated the following constitutional rights, and the analysis for each follows: (1) the Fourth Amendment based on unreasonable seizure by City officers, (2) the Fourth and Fourteenth Amendments based on denial of medical care by City officers, (3) the Fourth and Fourteenth Amendments based on denial of medical care by County

United States District Court
Northern District of California

officers, and (4) the Fourteenth Amendment based on familial interference by City and County officers.

### 1. *Fourth Amendment Claim Against City Officers for Unreasonable Seizure*

Plaintiff alleges that the City officers detained and arrested Borges in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (Dkt. No. 25 at ¶¶ 34-38.) However, at the hearing on this motion, on December 13, 2016, plaintiff conceded that the City officers did, in fact, have probable cause to arrest Borges.

Defendants' motion for summary judgment as to the Fourth Amendment unreasonable seizure claim against the City officers is therefore **GRANTED.**

### 2. *Fourth and Fourteenth Amendment Claims Against City Officers for Denial of Medical Care*

Plaintiff brings a Fourth Amendment claim or, in the alternative, a Fourteenth Amendment claim for denial of medical care by the arresting City officers, Officers Stelzig and Franco. (Dkt. No. 111 at 1-2.) Plaintiff alleges that Borges had "signs and symptoms of a high level of methamphetamine intoxication and possible overdose, excited delirium, and/or a head injury." (Dkt. No. 78 at 35.) Plaintiff further alleges that "[o]fficers are reasonably trained that any one of these three conditions requires immediate medical attention, and the simple step of either calling paramedics or transporting Borges to the hospital would not have been contrary to any legitimate police interests." (*Id.*) Thus, under the Fourth Amendment, plaintiff claims that Officers Stelzig and Franco "unreasonably denied and delayed medical assistance" for Borges. (Dkt. No. 25 at ¶ 47.) Under the Fourteenth Amendment, plaintiff claims that the City officers were "recklessly and deliberately indifferent to [Borges's] serious medical needs." (*Id.* at ¶ 53.)

At the hearing on this motion, on December 13, 2016, the parties agreed that Borges's right to medical care during and immediately after his arrest was governed by the Fourth Amendment and its "objective reasonableness" standard, rather than the Fourteenth Amendment's

United States District Court
Northern District of California

1    guarantee of "substantive due process."[3] Thus, as the Fourth Amendment provides an explicit

2    textual source of constitutional protection for the conduct at issue here, plaintiff's Fourteenth

3    Amendment claim against the City officers for denial of medical care is **DISMISSED AS MOOT**.

4            The Fourth Amendment requires law enforcement officers to provide objectively

5    reasonable post-arrest care. *Mejia*, 2012 WL 1079341, at *5 n. 12 (citing *Tatum*, 441 F.3d at

6    1099). However, the Ninth Circuit has not prescribed the exact contours of what constitutes

7    objectively reasonable post-arrest care. *Id*. (citing *Tatum*, 441 F.3d at 1099). At a minimum,

8    though, the Ninth Circuit has required police officers to "seek necessary medical attention by

9    promptly summoning help or taking the injured arrestee to a hospital." *Estate of Cornejo ex rel.*

10   *Solis v. City of Los Angeles*, 618 F. App'x 917, 920 (9th Cir. 2015) (citing *Tatum*, 441 F.3d); *see*

11   *also City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 245 (1983) ("Whatever the standard may

12   be, [the defendant] fulfilled [his] constitutional obligation by seeing that [the apprehended person]

13   was taken promptly to the hospital that provided the treatment necessary for his injury.").

14           In *Tatum*, for instance, the Ninth Circuit held that "a police officer who promptly summons

15   the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment"

16   where the arrestee's labored breathing after being handcuffed made it clear he was in distress.

17   *Tatum*, 441 F.3d at 1099 (citation omitted). The Ninth Circuit specifically held that the officers in

18   *Tatum* did not violate the Fourth Amendment by failing to perform CPR, since officers are not

19   required to provide "what hindsight reveals to be the *most effective* medical care for an arrested

20   suspect." *Id*. at 1098-99 (emphasis added) (citing *Maddox v. City of Los Angeles*, 792 F.2d 1408,

21   1415 (9th Cir. 1986).

22

23   _____

24           [3] *See also Tatum v. City and Cty. of San Francisco,* 441 F.3d 1090, 1098–99 (9th Cir.
     2006); *Mejia v. City of San Bernardino*, No. 11–cv–452, 2012 WL 1079341, at *5 n. 12 (C.D. Cal.

25   Mar. 30, 2012) (noting that *Tatum* mandates analysis of post-arrest medical care under the Fourth
     Amendment in the wake of *Graham v. Connor*, 490 U.S. 386 (1989)); *Von Haar v. City of*

26   *Mountain View*, No. 10-CV-02995-LHK, 2011 WL 782242, at *3 (N.D. Cal. Mar. 1, 2011) ("the
     Ninth Circuit has recently treated the failure to provide adequate medical care during and

27   immediately following an arrest as a claim properly brought under the Fourth Amendment and
     subject to the Fourth Amendment's objective reasonableness standard" (citations omitted)).

28

Drawing all reasonable inferences in favor of the non-moving party, plaintiff has not proffered sufficient evidence that the City officers failed to provide objectively reasonable post-arrest care to Borges. Even assuming that the City officers knew Borges was under the influence of a stimulant and may have had signs of an overdose, plaintiff has offered no authority to suggest that the only reasonable course of action is to take the arrestee to the hospital rather than a nearby jail, where the arrestee should receive a medical evaluation. Although taking Borges to the hospital may have been the most effective medical care for him in hindsight, this is not required by the Fourth Amendment. Moreover, in this case, plaintiff's medical expert admits that Borges was clinically stable at the time of his arrest, Dkt. No. 82-1 at 15, and video footage of the arrest shows that Borges was capable of understanding officer instructions and was compliant at the time of his arrest, Dkt. No. 79-19. Thus, the arresting City officers did not violate Borges's Fourth Amendment right to medical care.

For the reasons stated above, defendants' motion for summary judgment as to the Fourth Amendment denial of medical care claim for City officers Stelzig and Franco is therefore **GRANTED**.

### 3. Fourth and Fourteenth Amendment Claims Against County Officers for Denial of Medical Care

Plaintiff also brings a Fourth Amendment claim or, in the alternative, a Fourteenth Amendment claim for denial of medical care by the County officers who detained Borges in the sobering cell after he was brought to the County jail. (Dkt. No. 111 at 1-2.) Plaintiff asserts that the County officers failed to follow their own policies "requiring a nurse to conduct [an] intake medical evaluation due to Borges's delirious and 'uncooperative' state, failed to conduct even a minimal medical screening, and . . . made observations of obvious distress that should have led to emergency medical treatment, or at least immediate medical evaluation." (Dkt. No. 78 at 30.) Plaintiff further argues that, "[i]nstead of calling for a nurse or arranging for transportation to the hospital, [the County officers] rushed Borges into a sobering cell, where they watched him rapidly deteriorate over a video monitor." (*Id.*) Thus, using the Fourth Amendment rubric, plaintiff claims that the County officers "unreasonably denied and delayed medical assistance" for Borges. (Dkt.

United States District Court
Northern District of California

United States District Court
Northern District of California

No. 25 at ¶ 47.) Using the Fourteenth Amendment rubric, plaintiff claims that the County officers were "recklessly and deliberately indifferent to [Borges's] serious medical needs" and "violated [Borges's] substantive due process liberty interest in reasonably nonrestrictive confinement conditions." (*Id.* at ¶¶ 53-54.)

> ### a.  *Legal Standard: Fourth versus Fourteenth Amendment*

The parties do not dispute that Borges—a warrantless arrestee who had not been convicted of any crime—had some constitutional right to medical care during his detention in the sobering cell. At a minimum, all parties agree that Borges had a Fourteenth Amendment right to medical care that would be governed by the Fourteenth Amendment's "deliberate indifference" standard. Plaintiff, however, argues that Borges also had a Fourth Amendment right to medical care, and that the Court's analysis should therefore be governed by the Fourth Amendment's "objective reasonableness" standard. (Dkt. No. 78 at 33-42.) *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1989) (favoring an explicit textual source of constitutional protection over a more generalized notion of substantive due process when determining which constitutional amendment governs a particular right).

The Ninth Circuit has not addressed this question directly and its prior decisions suggest alternative conclusions. *Compare Pierce v. Multnomah Cnty., Oregon,* 76 F.3d 1032, 1043 (9th Cir. 1996) (holding that, because the Fourth Amendment is used "to assess the constitutionality of the *duration* of or *legal justification* for a prolonged warrantless, post-arrest, pre-arraignment custody," it "should also apply to evaluate the *condition* of such custody" (citations omitted)) with *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1197, 1187 (9th Cir. 2002) (holding that, under *Pierce*, "the Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention," but that pretrial detainee's "right to receive adequate medical care while in the custody of the County . . . derive[d] from the due process clause" under the Fourteenth Amendment), *overruled on other grounds*, *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (*en banc*).

For the reasons outlined below, the Court finds it is not necessary at this juncture to decide whether Borges had a Fourth Amendment right to medical care, rather than just a Fourteenth

United States District Court
Northern District of California

Amendment right. As outlined below, with respect to Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger, sufficient evidence exists from which a jury could find that each violated Borges's right to medical care even under the more defendant-friendly "deliberate indifference" standard of the Fourteenth Amendment. With respect to Corporal Basler, even under the more plaintiff-friendly "objective reasonableness" standard of the Fourth Amendment, insufficient evidence exists from which a jury could find that he violated Borges's right to medical care.

> b. *Analysis as to Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger*
>
> i.  The Impact of *Castro* on the Fourteenth Amendment's "Deliberate Indifference" Standard

While this case was pending, the Ninth Circuit decided *Castro*, 833 F.3d 1060, which analyzed a Fourteenth Amendment claim against officers who failed to prevent an attack against a pretrial detainee by another inmate with whom he was jailed. The *Castro* court announced a new, objective "deliberate indifference" standard for analyzing a pretrial detainee's "failure-to-protect" claim, which no longer required proof of an officer's subjective awareness of the risk to which he was exposing the detainee. *See id.* at 1070-71. The parties disagree over *Castro*'s application here. Plaintiff argues this new objective "deliberate indifference" standard should be used to analyze the Fourteenth Amendment claim for denial of Borges's medical care. (Dkt. No. 116 at 2.) Defendants disagree. (Dkt. No. 114 at 13, n. 4.) The Court will first address how *Castro* changed the Fourteenth Amendment "deliberate indifference" standard in "failure-to-protect" cases before discussing how the *Castro* "deliberate indifference" standard also applies to the Fourteenth Amendment denial of medical care claim in this case.

Prior to *Castro*, the Ninth Circuit had held that a single "deliberate indifference" test existed under both the Eighth and Fourteenth Amendments. *Castro*, 833 F.3d 1060*, 1068 (citations omitted). This was a subjective "deliberate indifference" test, derived from the Eighth Amendment, which required the plaintiff to prove an officer's punitive intent or subjective awareness of the risk of harm. *Id.* (citations omitted). In *Castro*, though, the court found that this

United States District Court
Northern District of California

prior Ninth Circuit precedent was cast into "serious doubt" as a result of the Supreme Court's ruling in *Kingsley*, which held that a pretrial detainee need not prove an officer's "subjective intent to punish" to support a Fourteenth Amendment excessive force claim (as opposed to an Eighth Amendment claim). *Id*. at 1068-70 (citing *Kingsley v. Hendrickson*, 135 S.Ct. 2466 (2015)). The *Castro* court held that, "[i]n sum, *Kingsley* rejected the notion that there exists a single 'deliberate indifference' standard applicable to all § 1983 claims, whether brought by pretrial detainees or by convicted prisoners." *Id*. at 1069 (citing 135 S.Ct. 2466).

After examining *Kingsley* at length, the *Castro* court also held that "the broad wording of *Kingsley* . . . did not limit its holding to 'force' but spoke to 'the challenged governmental action' generally." *Id*. at 1070 (citing 135 S.Ct. at 2473–74). The *Castro* court thus extended *Kingsley*'s elimination of the subjective awareness requirement beyond Fourteenth Amendment excessive force cases, holding that *Kingsley* also applied to Fourteenth Amendment failure-to-protect claims. *Id*. In so holding, *Castro* overruled the single, subjective "deliberate indifference" standard previously used to analyze both Eighth and Fourteenth Amendment claims, finding that *Kingsley* required these two types of claims to have different "deliberate indifference" standards. *Id*. In its place, *Castro* articulated an objective "deliberate indifference" test for Fourteenth Amendment failure-to-protect claims, in which the plaintiff need only prove that the officer's conduct was subjectively "intentional," but may then otherwise rely on "purely objective" evidence, rather than having to prove punitive intent or subjective awareness of risk. 833 F.3d at 1068-70.

The *Castro* court did not specifically address whether this new objective "deliberate indifference" test should apply specifically to pretrial detainees' Fourteenth Amendment claims arising from untreated serious medical needs. However, the Ninth Circuit has long analyzed claims that government officials failed to address pretrial detainees' serious medical needs using the same "deliberate indifference" standard as cases alleging that government officials failed to protect pretrial detainees in some other way. *See id*. at 1085 (Ikuta, J., dissenting) (collecting cases). In addition, *Castro* expressly overruled *Clouthier v. County of Contra Costa,* 591 F.3d 1232 (9th Cir. 2010)—a case which itself involved claims that correction facility officials failed to address the serious medical needs of a pretrial detainee—for interpreting "deliberate indifference"

as requiring proof of the officer's subjective intent to punish. 833 F.3d at 1070. Thus, when considered alongside *Castro*'s broad interpretation of *Kingsley*, the Court finds that applying *Castro*'s objective "deliberate indifference" test to this case is an appropriate lens through which to evaluate the claim. *See also Guerra v. Sweeny*, No. 113CV01077AWIBAMPC, 2016 WL 5404407, at *3 (E.D. Cal. Sept. 27, 2016) (finding that *Castro* should apply to pretrial detainees' claims of injury resulting from untreated serious medical needs).

ii.     Application of the *Castro* "Deliberate Indifference" Test

Under *Castro*, the elements of Borges's Fourteenth Amendment claim against the individual County officers are:

(1)     The [officer] made an intentional decision with respect to the conditions under which [Borges] was confined;

(2)     Those conditions put [Borges] at substantial risk of suffering serious harm;

(3)     The [officer] did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the [officer's] conduct obvious; and

(4)     By not taking such measures, the defendant caused [Borges's] injuries.

*Castro*, 833 F.3d at 1071.

The parties do not dispute that the first element of the *Castro* test is easily met here, as the County officers made intentional decisions regarding the conditions of Borges's confinement and medical care. (See Dkt. No. 114 at 3, Dkt. No. 116 at 2.) Indeed, only a purely accidental act or inaction would fail to satisfy this first requirement. *See id*. at 1070 (noting this element "would not be satisfied in the failure-to-protect context if the officer's inaction resulted from something totally unintentional," such as "an accident or sudden illness that rendered him unconscious and thus unable to monitor the cell").

The remaining three elements of the *Castro* test are "purely objective." *Id*. Thus, drawing all reasonable inferences in favor of plaintiff, on the second element, the Court finds that a dispute of material fact exists as to whether Borges faced a substantial risk of serious harm. At best, the experts disagree. Defendants' medical expert believes that Borges ingested a lethal dose of methamphetamine and would not have recovered even with medical care. (Dkt. No. 114 at 6.)

16

1    Plaintiff's medical expert believes that he could have saved plaintiff if he had been brought to the

2    emergency room. (*Id*.)

3          "With respect to the third element, the defendant's conduct must be objectively

4    unreasonable, a test that will necessarily turn on the facts and circumstances of each particular

5    case." *Castro*, 833 F.3d at 1071 (citations and internal quotation marks omitted). The *Castro* court

6    held that this required only that there be "substantial evidence that a reasonable officer in the

7    circumstances would have appreciated the high degree of risk involved . . . ." *Id*. at 1072. In

8    *Castro*, the court found that "[t]here clearly [was] sufficient evidence" to support the jury's

9    finding of "deliberate indifference" because the officers knew or should have known that (1) the

10   plaintiff was too intoxicated to care for himself, (2) the inmate they placed in the sobering cell

11   with him was combative, (3) the jail's written policies forbade their conduct, and (4) other housing

12   options were available. *Id*. at 1073.

13         Here, drawing all reasonable inferences in favor of plaintiff, sufficient facts exist from

14   which a jury could find that a reasonable officer under the circumstances would have appreciated

15   the high degree of risk involved to Borges and taken reasonable measures to abate that risk,

16   including, without limitation, calling for the jail nurse to render medical care to Borges, either

17   during his intake or after observing Borges's behavior on the sobering cell's camera monitor. (*See*

18   Lichten Report at Op. Nos. 3- 5.) A jury could also find that a reasonable officer in Corporal

19   Hammer's position would have contacted Borges to ascertain that he was alright or called the jail

20   nurse to assess Borges after observing his behavior during the first and second sobering cell safety

21   checks. (*See* Lichten Report at ¶ 63.)

22         The fourth and final element of the *Castro* test requires "that the officers' failure to take

23   reasonable measures to protect [Borges] caused his injuries." *Castro*, 833 F.3d at 1072. A jury

24   could find that this element is met here, where plaintiff's medical expert states that Borges more

25   than likely would have survived with access to proper medical treatment. (Dkt. No. 82 -1 at ¶ 12.)

26                    iii.    Qualified Immunity

27         For the purposes of the qualified immunity analysis, defendants argue in their motion that,

28   "[t]o the extent any [constitutional] violation is found to have occurred, such a violation would not

United States District Court
Northern District of California

1   have been clearly established and qualified immunity should apply." (Dkt. No. 67 at 26.)

2   Defendants offer no further support for this argument. However, in their supplemental briefing,

3   defendants note that, "particularly with respect to plaintiff's Fourth and Fourteenth Amendment

4   denial of medical care claims against the County [officers], the case law is not clearly

5   established," which the Court interprets as an attempt to support their earlier argument that there

6   was no clearly established constitutional right that could have been violated. (Dkt. No. 94 at 18.)

7        Defendants' arguments fail to persuade. While the legal *standard* to evaluate such conduct

8   may be unclear, the nature of the constitutional violation is not. *See Hope v. Pelzer*, 536 U.S. 730,

9   741 (2002) (holding that the state of the law need only be sufficiently clear to give defendants fair

10  notice their conduct was illegal). Here, just as in *Castro*, "[t]he contours of the right required only

11  that the individual defendants take reasonable measures to mitigate the substantial risk to [the

12  decedent]." 833 F.3d 1067. Thus, the officers' obligations did not change, even though the court in

13  *Castro* was (and is also here) applying a new, objective "deliberate indifference" standard to the

14  analysis of the Fourteenth Amendment claim. *See id*. A reasonable officer would have known that

15  ignoring serious signs of medical distress would violate a detainee's constitutional rights,

16  regardless of which legal standard is ultimately applied to analyze the violation. Therefore,

17  qualified immunity does not bar the claim against the County officers.

18       For the reasons set forth above, defendants' motion for summary judgment as to the Fourth

19  and Fourteenth Amendment denial of medical care claims against Corporal Bittner, Corporal

20  Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

21                 *c.   Analysis as to Corporal Basler*

22       Plaintiffs allege that Corporal Basler was seated at the nearby computer desk in the

23  processing area while Borges was being patted down, and that he also got up to assist Corporal

24  Bittner, Corporal Hammer, Officer Swim, and Officer Stelzig as they walked Borges to the

25  sobering cell. (Dkt. No. 79 at AMF 241, 353-354.) Plaintiffs further allege that, after Corporal

26  Hammer performed the first sobering cell safety check, he had a discussion with Corporal Basler

27  and Corporal Bittner immediately after he came back from the safety check. (*Id*. at AMF 402.)

28

United States District Court
Northern District of California

Even if the more plaintiff-friendly Fourth Amendment "objective reasonableness" standard applied in this case, the Court finds nothing in this summary judgment record to support a jury finding that Corporal Basler acted in a manner that was objectively unreasonable under the circumstances. Even more tellingly, plaintiff's police expert also offers no support for the proposition that Corporal Basler behaved unreasonably.

Thus, defendants' motion for summary judgment as to the Fourth and Fourteenth Amendment denial of medical care claims against Corporal Basler is **GRANTED**.

### 4. Fourteenth Amendment Claims Against City Officers and County Officers for Familial Interference

Plaintiff alleges that the City officers and County officers violated her Fourteenth Amendment substantive due process right to familial association with her deceased son, Borges. "This circuit has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children." *Wilkinson v. Torres,* 610 F.3d 546, 554 (9th Cir. 2010) (citing *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir.1991)). Neither party appears to dispute that this right was clearly established for the purposes of the qualified immunity analysis.

To show that her Fourteenth Amendment right to familial association was violated, plaintiff must prove that the officers' conduct "shock[ed] the conscience." *Lewis*, 523 U.S. at 846; *see also Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)). Although the overarching test is whether the officers' conduct "shock[ed] the conscience," the Ninth Circuit has distinguished between familial interference cases where this standard is met by showing only that the officer acted with "deliberate indifference" and cases that require a more demanding showing that the officer acted with a "purpose to harm" for reasons unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d. at 1137 (citing *Lewis*, 523 U.S. at 836).

To determine which standard is appropriate here, the "critical consideration is whether the circumstances are such that actual deliberation [by the officers] [was] practical." *Id*. (quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir.1998) (internal quotation marks omitted)). When actual deliberation is practical, then an officer's "deliberate indifference"

19

may suffice to shock the conscience. *Id.* However, if a law enforcement officer must make a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives. *Id.* at 1137-40. "A court may determine at summary judgment whether the officer had time to deliberate (such that the deliberate indifference standard applies) or instead had to make a snap judgment because he found himself in a quickly escalating situation (such that the purpose to harm standard applies), so long as the undisputed facts point to one standard or the other." *Chien Van Bui v. City & Cty. of San Francisco*, 61 F. Supp. 3d 877, 901 (N.D. Cal.2014) (citation and internal quotation marks omitted). "By its nature," though, "the determination of which situation the officer actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards." *Id.* (citation and internal quotation marks omitted).

Drawing all reasonable inferences in favor of plaintiff, sufficient evidence exists for a jury to find that both the City and County officers were able to deliberate during the course of Borges's arrest and his subsequent detention. Thus, for the purposes of this motion, the Court applies the "deliberate indifference" standard to plaintiff's Fourteenth Amendment familial interference claim under the "shocks the conscience" test.[4]

---

[4] City defendants' arguments to the contrary do not persuade. In their original briefing on this motion, the parties agreed that the "deliberate indifference" standard should apply in this case. (Dkt. Nos. 67 at 24-25, 78 at 36-37, and 94 at 15-18). In their supplemental briefing, however, City defendants now conflate various standards. They seem to argue that the "shocks the conscience" standard applies, is "higher," and is not met. (Dkt. No. 113 at 3-4; see also Dkt. No.117 at 2-3.) As outlined above, Ninth Circuit precedent is clear that, in this context, "deliberate indifference" is simply a subset of the "shocks the conscience" test. *Porter*, 546 F.3d at 1137.

Also, City defendants now rely on case law using the "purpose to harm" standard, rather than the "deliberate indifference" standard, to argue that the officers' conduct did not "shock the conscience" in this case. (*See* Dkt. No. 113 at 41.) Those cases differ from this one, however, given the amount of time both City and County officers had to deliberate. As City defendants themselves point out in their supplemental briefing, Officer Stelzig even had time to discuss with Officer Franco "just the total well-being of Mr. Borges, on whether we felt that he needed medical clearance, or, you know, obviously he's going to be medically checked out at the jail. . . ." (Dkt. No. 113 at 5.) In contrast, cases in which the Ninth Circuit has found that the "purpose to harm" standard is appropriate to deal with situations that evolved so quickly that actual deliberation was not possible and required "repeated split-second decisions." *Porter*, 546 F.3d at 1139-1140 (holding that actual deliberation was not possible and applying the "purpose to harm" standard where a five-minute altercation presented a series of events that "were in constant flux, with much yelling, confusion and a driver who was refusing to exit or stop his car"); *Wilkinson*, 610 F.3d at

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*a.   The Impact of* Castro *on the "Deliberate Indifference" Test*

As previously discussed, the *Castro* court specifically found that "the broad wording of *Kingsley* . . . did not limit its holding to 'force' but spoke to 'the challenged governmental action' generally," which suggests that *Kingsley* and *Castro* should extend to most claims arising under the Fourteenth Amendment's substantive due process clause. *See Castro*, 833 F.3d at 1070 (citing 135 S.Ct. at 2473–74). In addition, despite supplemental briefing, the only familial interference case either party cites where the officers had time to deliberate is *Lee v. of Los Angeles*, 250 F.3d 668, 685–86 (9th Cir. 2001), which itself suggests an objective standard is appropriate for analyzing plaintiff's familial interference claim. Thus, the Court will apply *Castro*'s objective deliberate indifference test to plaintiff's familial interference claim.[5]

---

554 (holding that the "purpose to harm" standard was appropriate where, "[w]ithin a matter of seconds, the situation evolved from a car chase to a situation involving an accelerating vehicle and dangerously close proximity to officers on foot"); *Moreland*, 159 F.3d 365 at 373 (applying "purpose to harm" standard where police officers were responding to a gun fight in a crowded parking lot).

[5] The parties were also ordered to brief whether the *Castro* "deliberate indifference" standard should apply to plaintiff's familial interference claim and, assuming that the *Castro* standard does apply, whether summary judgment should be granted. (Dkt. No. 112 at 2.)

In her supplemental briefing responding to this order, plaintiff instead appears to argue that two separate series of Ninth Circuit cases applying Fourteenth Amendment substantive due process analysis to familial interference claims are no longer good law. (*See* Dkt. Nos. 115 at 2-6, 116 at 7-13.) Plaintiff appears to have two bases for this argument: (1) that *Lewis*, 523 U.S. 833, and its progeny, which use the "shocks the conscience" test, have been called into question by the Supreme Court's decision in *Kingsley*, 135 S. Ct. 2466, which was relied upon by the Ninth Circuit in *Castro*, and (2) that Ninth Circuit precedent holding that a due process familial interference claim should be analyzed separately, without regard to the standard used to analyze the underlying constitutional violation, has also been called into question by *Lingo v. City of Salem*, 832 F.3d 953 (9th Cir. 2016). The Court disagrees.

First, plaintiff argues that, "in light of *Kingsley* and *Castro*, it is likely that the Ninth Circuit would conclude that [*Lewis* and its Ninth Circuit progeny] only set the standard for a due process familial interference claim involving accidental or unintentional conduct." (Dkt. No. 115 at 6.) However, neither *Lewis* nor *Kingsley* support finding any liability whatsoever for the type of "accidental" or "unintentional" conduct plaintiff suggests. In fact, *Kingsley* reaffirmed *Lewis*'s holding that even "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." 135 S. Ct. at 2472 (quoting *Lewis*, 523 U.S. at 849) (internal quotation marks omitted). As the Supreme Court elaborated in *Kingsley*: "[I]f an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—i.e., purposeful or knowing—the pretrial detainee's claim may proceed." *Id*; see also *Daniels v. Williams*, 474 U.S. 327, 331 (1986) ("Historically, this guarantee of due process has been applied

21

to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." (citations omitted)). Consequently, *Kingsley* does not alter the "shocks the conscience" test articulated in *Lewis*, which has been applied by the Ninth Circuit to familial interference claims, in the manner suggested by plaintiff.

Plaintiff next appears to argue that the Court should analyze the substantive due process familial interference claim by the same culpability standard as the underlying constitutional violation, e.g. the Court should apply a Fourth Amendment "objective reasonableness" standard when the underlying constitutional violation was a Fourth Amendment violation. (Dkt. No. 115 at 6.) This argument was flatly rejected by the Ninth Circuit in *Byrd v. Guess*, 137 F.3d 1126 (9th Cir. 1998), *abrogation on other grounds recognized by Moreland*, 159 F.3d at 372-73. In *Byrd*, the mother and widow of the decedent asserted that, even though their loss of society claims arose under the Fourteenth Amendment, the real basis for their claims was the violation of the decedent's Fourth Amendment rights by the police officers who shot him. *Id.* at 1134. Thus, the *Byrd* plaintiffs argued that their Fourteenth Amendment claim should be governed by the "objective reasonableness" standard applicable to claims brought under the Fourth Amendment. *Id.* In response, the *Byrd* court held:

> This argument has surface appeal: If the police kill a person, why should the claim of the surviving spouse for loss of society be governed by a different standard than the claim of the deceased's estate? The surviving spouse and the estate have both suffered a loss by the killing. It would certainly simplify jury instructions if the claims of the surviving spouse and the estate, often brought in the same action, were both governed by the objective reasonableness standard. But there is binding and persuasive authority otherwise. The Supreme Court has stated that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)).

> If the Byrds' argument is adopted, the Byrds would be entitled to damages for loss of society if [decedent's] Fourth Amendment rights were violated. In essence, the Byrds would be vicariously asserting [decedent's] Fourth Amendment rights, in violation of *Rakas*'s admonition. To avoid this dilemma, the Byrds' claim must be governed by a different standard than Sylvan's claim. This holding is consistent with our recognition in *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir.1991), that a parent's loss of a child's society "raises a different constitutional claim" than the child's direct Fourth Amendment claim. *Id.* at 325.

*Id.*

Despite this clear ruling to the contrary, plaintiffs attempt to distinguish *Byrd* by arguing that its reliance on *Rakas* and *Alderman*—which both limited the application of the exclusionary rule in criminal cases to the person whose Fourth Amendment rights had been violated—was somehow undermined by the Ninth Circuit's recent holding in *Lingo*, 832 F.3d at 959. (Dkt. No. 115 at 5-6.) *Lingo*, however, held that the exclusionary rule does not apply in section 1983 cases to prevent officers from defending themselves using the illegally obtained evidence that gave them probable cause to arrest the plaintiff. 832 F.3d at 959-60. *Lingo* said nothing that would alter the well-established rule that Fourth Amendment rights are personal rights that may not be vicariously asserted, upon which the court's holding in *Byrd* was based. Thus, plaintiff's argument that *Lingo* undermines Ninth Circuit precedent holding that Fourteenth Amendment familial interference claims are to be analyzed separately from the underlying constitutional violation is inapposite.

United States District Court
Northern District of California

### b.  Application of the Castro Deliberate Indifference Test

Although the Ninth Circuit has not applied the *Castro* objective "deliberate indifference" test in this context, the reasoning of *Castro* suggests that the Court should first ask whether the officer's conduct with respect to plaintiff was subjectively "intentional," but then rely on "purely objective" evidence to determine if the plaintiff's Fourteenth Amendment right was violated. *See* 833 F.3d at 1070-71. Thus, with respect to the City officers, assuming their conduct was "intentional," it appears that the analysis under *Castro* would be similar to the analysis under the Fourth Amendment's "objective reasonableness" test outlined in section IV(A)(2) above. For the reasons outlined in that section, where the Court explained that no triable issue of fact exists as to whether the City officers' conduct was "objectively reasonable," defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against the City officers is **GRANTED**.

For the reasons set forth in section IV(A)(3)(b)(ii), which already applied the *Castro* deliberate indifference test to County officers' conduct, defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**. Likewise, for the reasons set forth in section IV(A)(3)(c), defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against Corporal Basler is **GRANTED** because there is no triable issue of fact as to whether Corporal Basler acted in a manner that was "objectively unreasonable."

**B.    Section 1983 Claim for Municipal and Supervisory Liability against City, County, and Sheriff Downey**.

#### 1.  Legal Standard and Analysis as to Entity Defendants

In *Monell v. Dep't of Social Servs.*, the at Supreme Court held that local governments are "persons" under section 1983 subject to liability for damages where "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." 436 U.S. 658, 691 (1978). Although a municipality may not be held vicariously liable for the unconstitutional acts of its employees on the basis of an employer-employee relationship with the tortfeasor, it may be held

23

liable under *Monell* when a municipal policy or custom causes an employee to violate another's constitutional right. 436 U.S. at 691–92. In order to hold a municipality liable, a plaintiff must show that: (1) he or she possessed a constitutional right of which he or she was deprived; (2) the city had a policy; (3) said policy amounted to deliberate indifference to his or her constitutional rights; and (4) such policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997) (citations omitted).

Here, the Court has already found no triable issue of fact exists as to the first element with respect to the City defendants in section IV(A)(2), as Borges's Fourth Amendment right to medical care was not violated by City officers. Thus, defendants' motion for summary judgment as to the section 1983 claim against the City is **GRANTED**.

With respect to the County defendants, the Court has found triable issues of fact exist with regard to the first element, as set forth in section IV(A)(3)(b)(ii), since plaintiff has proffered sufficient evidence that some of the County officers' actions (and inactions) may have deprived Borges of a constitutional right to medical care under the Fourth and/or Fourteenth Amendments.

As to the second and third elements for establishing *Monell* liability against the County, plaintiff argues that the County failed "to implement adequate training on, and ensure compliance with, written policies" and "failed to enact policies and training to ensure jail staff would recognize signs of medical distress and call medical staff when appropriate." (Dkt. No. 78 at 40.) As a result, plaintiff argues that the jail staff "would routinely place arrestees who were uncooperative due to a high level of intoxication and/or mental illness in sobering cells without a comprehensive medical and/or health screening," and failed to "adequately monitor arrestees in sobering cells." (*Id*.) Plaintiff argues that these policies and practices, as well as the failure to train, were "deliberately indifferent" because the County was aware of "a substantial risk of serious harm in the form of intoxicated, uncooperative arrestees not receiving proper medical screenings, being improperly placed in poorly monitored sobering cells, and dying at the jail as a result." (*Id*.) According to plaintiffs, such awareness was "demonstrated by [the County's] own written policies that reflect standard jail practices, other deaths at the jail and elsewhere, and their administrative review of the Cotton incident, after which they failed to take corrective action in the face of known

1    training and policy deficiencies." (*Id* at 40-41.) In contrast, defendants seek summary judgment on

2    the grounds that the evidence shows that the County jail policies with respect to medical services

3    were compliant with Institute for Medical (IMQ) standards, and that each of the County officers

4    involved in this incident acted in compliance with their training and with jail policy. (Dkt. No. 94

5    at 16-18.) Defendants also argue that its sobering cell policies and practices were sufficient. (*See*

6    *id*. at 20-22.)

7         When viewed in the light most favorable to plaintiff, the Court finds that, at a minimum,

8    triable issues of fact exist concerning whether (1) the jail's medical screening practices led to

9    Borges being improperly placed in the sobering cell, (2) the jail's sobering cell monitoring policies

10   were followed in this case, and (3) the jail's sobering cell monitoring policies were sufficient to

11   ensure an inmate's medical condition was not rapidly deteriorating.

12        First, a jury could find that the County practice of placing an "uncooperative" inmate in the

13   sobering cell prior to a medical evaluation by the medical staff was inadequate since, as

14   defendants acknowledge, the medical staff will not go inside the sobering cell to examine the

15   inmate and take his vital signs if he is "uncooperative." (Dkt. No. 67 at 14.) Such a practice is akin

16   to the policy of not evaluating uncooperative detainees at issue in *Gibson*, where the court noted

17   that "it was [the decedent's] urgent medical need that made him combative and uncooperative, and

18   because [the decedent] was combative and uncooperative County policy directed the jail's medical

19   staff not to evaluate [decedent] to determine if he had an urgent medical need." 290 F.3d at 1189.

20   Here, of course, the jail's practice did require a nurse come to "evaluate" Borges from outside the

21   sobering cell, but a jury could find that such a cursory assessment—which did not include the

22   measurement of vital signs—was insufficient to ensure Borges received adequate medical care,

23   when compared to the in-person medical evaluation for "cooperative" detainees.

24        Second, a jury could find that the County's sobering cell monitoring policy was not

25   followed in this case. The policy required direct visual observation of inmates held in sobering

26   cells every 15 minutes, and required the officer observing the inmate to document his or her

27   observations on the sobering cell log. (*See* Dkt. No. 68-1 at 48.) In addition, officers are supposed

28   to "check the inmate's breathing during cell checks to determine that breathing is regular." (*Id*.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1    County defendants argue that this policy was followed here. While it is undisputed that County

2    officers did check the sobering cell once every 15 minutes as required, Borges's last movement

3    detectable by the sobering cell camera was at 3:16 or 3:17 p.m., nearly 45 minutes prior to when

4    County officers noted that Borges was nonresponsive and began to provide emergency medical

5    care. During the interim, whether the three sobering cell checks ranged in time from 1 to 2.6

6    seconds, as plaintiff argues, or lasted as long as 3.238 seconds, as defendant argues, a jury could

7    find that these checks were not actually long enough for an officer to determine that Borges's

8    breathing was regular, as required by County policy. (*See* Dkt. No. 78 at 28-29.)

9         Third, if a jury found that the County's sobering cell monitoring policy was followed in

10   this case, that jury could also still find that the policy was insufficient to ensure that an inmate's

11   condition was not rapidly deteriorating, requiring medical assistance. For example, a jury could

12   agree with plaintiff's expert that the County is "neglectful for failing to have adequate policies

13   regarding an audio monitoring system in the subject sobering cell," Dkt. No. 72 at 5, regardless of

14   whether a "requirement" existed to use an audio monitoring system in the sobering cell. Thus,

15   when viewed in the light most favorable to plaintiffs, the Court finds that triable issues exist as to

16   whether these practices, policies, and failures were constitutionally adequate.

17        For the County to be liable for "deliberate indifference," though, it must also have been

18   aware of the risk that its policies or failures presented. *Gibson*, 290 F.3d at 1190. "[T]his inquiry is

19   subject to demonstration in the usual ways, including inference from circumstantial evidence,"

20   such as other written policies demonstrating notice, common knowledge that a scenario was likely

21   to recur, or a practice of ignoring a need in the past. *See id.* at 1190-91. (citation and internal

22   quotation marks omitted). "Municipalities' continued adherence to an approach that they know or

23   should know has failed to prevent tortious conduct by employees may establish the conscious

24   disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger

25   municipal liability." *Board of Comm'rs v. Brown*, 520 U.S. 397, 407 (1997) (citations and internal

26   quotation marks omitted). In this case, as in *Gibson*, "a plethora of circumstantial evidence could

27   lead a reasonable jury to infer that the County was aware of the risk that its policies presented."

28   *Gibson*, 290 F.3d at 1190.

United States District Court
Northern District of California

As in *Gibson*, "a jury could conclude that County policymakers knew that inevitably some prisoners arrive at the jail with urgent health problems requiring hospitalization. The fact that County policy requires that detainees be checked for medical conditions requiring immediate attention indicates such knowledge." *Id.* Second, a jury could find that the County's own policy makes it clear that it was aware of the risks of not properly assessing an inmate: if a "proper assessment and/or vital signs cannot be obtained, the arrestee will be refused pending medical clearance from the hospital." (Dkt. No. 79 at AMF 309.) Third, at least one other death in 2010 involving another inmate from a drug overdose occurred, which a jury could find put the County on notice of the need for emergency medical care for inmates with serious drug overdoses. (Dkt. No. 79 at AMF 501-502.) Fourth, another inmate, Martin Cotton, died in the sobering cell in 2007 after receiving an incomplete medical screening, and after County officers failed to intervene despite Cotton spinning, rocking, lying down, attempting to stand but falling down, shadow boxing from a seated position, and hitting his head while in the sobering cell. (Dkt. No. 77-8 at 7.) Cotton's activity in the sobering cell was followed by a period of approximately forty minutes were County officers noted only that he was "on stomach/breathing" in the sobering cell before medical care was summoned. (*Id.* at 2.) A jury could find that Cotton's death also made the County aware of the dangers of inadequate monitoring of inmates in the sobering cell.

Finally, triable issues exist as to whether the fourth element for *Monell* liability is established here. Plaintiff has proffered sufficient evidence to support a finding that the County's policies, practices, and failures were a "moving force" behind Borges's death. As previously noted, plaintiff's medical expert believes Borges could have been saved at any point prior to 3:45 p.m. if he had been brought to the emergency room rather than locked up and left in the sobering cell.

Thus, defendants' motion for summary judgment as to the section 1983 claim against the County is **DENIED**.

### 2.   *Legal Standard and Analysis as to Sheriff Downey*

An official who is a supervisor may be held liable under section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v.*

*Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks omitted). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, . . . or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. (citations and internal quotation marks omitted) (alterations in original). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. (citation and internal quotation marks omitted).

For the reasons outlined in the previous section regarding the County's policies and failures, and drawing all reasonable inferences in favor of plaintiff, a jury could find that Sheriff Downey was aware of the substantial risks posed by intoxicated inmates and inadequate monitoring of the sobering cell, but failed to implement adequate training on existing policies and/or to modify existing policies to make them constitutionally adequate. [6]

Thus, defendants' motion for summary judgment as to the section 1983 claim against Sheriff Downey is **DENIED**.

**C.      Americans with Disabilities Act and Rehabilitation Act Claims**

Plaintiff brings claims under the Americans with Disabilities Act and Rehabilitation Act against the City and County for failing to accommodate Borges's schizophrenia in a reasonable manner, and for discriminating against him based on his disability. (Dkt. No. 78 at 41.)[7] Title II of the Americans with Disabilities Act requires public entities to provide equal access to services, activities, and programs. 42 U.S.C. § 12132. The Rehabilitation Act similarly bars discrimination on the basis of disability in the provision of benefits by programs receiving federal funding. 29

---

[6] At the hearing on this motion, on December 13, 2016, the parties also agreed that Sheriff Downey's liability rose or fell with the County's *Monell* liability.

[7] Although plaintiff's complaint also alleges discrimination based on a possible drug addiction, this was not addressed by plaintiff in her opposition to the motion for summary judgment. Accordingly, it is not considered as a basis for the Americans with Disabilities Act and Rehabilitation Act claims here.

United States District Court
Northern District of California

1   U.S.C. § 794. To establish liability, plaintiff must show that Borges was (1) a qualified individual

2   with a disability; (2) who was excluded from or denied services, programs or activities, or was

3   otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or

4   discrimination was by reason of his disability. *Weinrich v. L.A. County Metro. Transp. Auth.*, 114

5   F.3d 976, 978 (9th Cir. 1997).

6          Although plaintiff has presented sufficient evidence to show that a jury could find that

7   Borges suffered from schizophrenia, she has not offered any evidence from which a jury could

8   find that Borges was discriminated against on the basis of his schizophrenia. Plaintiff has also

9   presented no authority that a failure to screen adequately for mental health treatment immediately

10  upon arrival at the County jail amounts to a discriminatory policy under either the Americans with

11  Disabilities Act or the Rehabilitation Act.

12         Thus, defendants' motion for summary judgment as to the Americans with Disabilities Act

13  and Rehabilitation Act claims against the City and County is **GRANTED**.

14     **D.      State Law Claims for Failure to Summon Medical Care and Negligence**

15         Plaintiff brings state law claims for failure to summon medical care and negligence against

16  all defendants. The Court addresses each in turn.

17                  ***1.   Failure to Summon Medical Care***

18         In general, public entities in California are not liable for tortious injury unless liability is

19  imposed by statute. Cal. Gov. Code § 815. "[S]overeign immunity is the rule in California;

20  governmental liability is limited to exceptions specifically set forth by statute." *Castaneda v.*

21  *Dep't of Corr. & Rehab.*, 212 Cal. App. 4th 1051, 1069-70 (2013) (citation and internal quotation

22  marks omitted). However, with regard to "prisoners,"[8] "[s]ection 845.6 both affirms the public

23  entity immunity to liability for furnishing medical care [to prisoners], and creates a narrow

24  exception to that immunity." *Id.* at 1070. Section 845.6 states in relevant part:

25

26  _____

27         [8] At the hearing on this motion, on December 13, 2016, the parties agreed that Borges was
    a "prisoner," for the purposes of the statute, after entering the County jail.

28

Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856 [concerning mental illness and addiction], a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

In other words, section 845.6 imposes liability on the public employee and public entity when: (1) the public employee "knows or has reason to know of the need," (2) for a prisoner's "immediate medical care," and (3) "fails to take reasonable action to summon such medical care." *Castaneda*, 212 Cal. App. 4th at 1070. Liability under section 845.6 is established by "serious and obvious medical conditions requiring immediate care." *Watson v. California*, 21 Cal. App. 4th 836, 841 (1993). This is an objective standard. *See Lucas v. County of Los Angeles*, 47 Cal. App. 4th 277, 288-90 (1996).

As set forth in section IV(A)(3)(b)(ii), a reasonable jury could find that County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger knew of or should have known of Borges's immediate need for medical care, but failed to summon medical care. Thus, defendants' motion for summary judgment as to the section 845.6 claim against the County, Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

Likewise, as set forth in section IV(A)(3)(c), a reasonable jury could not find that Corporal Basler knew or should have known of Borges's immediate need for medical care. Thus, defendants' motion for summary judgment as to the section 845.6 claim against Corporal Basler is **GRANTED**.

Finally, by its own terms, section 845.6 applies only to a "prisoner." As plaintiff herself has conceded, Borges was not a prisoner before entering the County jail. (*See* Dkt. No. 78 at 32-33.) Thus, section 845.6 is not applicable to the City or City officers in this case. Defendants' motion for summary judgment as to the section 845.6 claim against the City and City officers is therefore **GRANTED**.

United States District Court
Northern District of California

### 2. *Negligence*

Plaintiff concedes that section 844.6(a)(2) immunizes County defendants from a negligence claim. (Dkt. No. 78 at 38.) Thus, defendants' motion for summary judgment as to the negligence claim against the County and the County officers is **GRANTED.**

With regard to the City, plaintiff argued at the hearing on this motion, on December 13, 2016, that section 815 only immunizes the City against a direct claim of negligence, and not a negligence claim based on vicarious liability for the actions of its employees. Defendants presented no argument to the contrary either at the hearing or in their motion. As set forth in section IV(A)(2), however, the Court has found that plaintiff has not offered sufficient evidence to show that the City officers acted unreasonably. Thus, defendants' motion for summary judgment as to the negligence claim against the City and City officers is **GRANTED.**

**IV.    CONCLUSION**

For the reasons stated herein,

(A)    Defendants' Motion to Exclude Expert Testimony is **DENIED.**

(B)    Defendants' Motion for Summary Judgment is **GRANTED** as to the following claims:

1. Defendants' motion for summary judgment as to the Fourth Amendment unreasonable seizure claim against the City officers is **GRANTED.**

2. Defendants' motion for summary judgment as to the Fourth Amendment denial of medical care claim for City officers is **GRANTED**.

3. Defendants' motion for summary judgment as to the Fourth and Fourteenth Amendment denial of medical care claims against County officer Corporal Basler is **GRANTED**.

4. Defendants' motion for summary judgment as to the Fourteenth Amendment familial interference claim against the City officers and County officer Corporal Basler is **GRANTED**.

5. Defendants' motion for summary judgment as to the section 1983 claim for municipal and supervisory liability against the City of Eureka is **GRANTED**.

United States District Court
Northern District of California

6.  Defendants' motion for summary judgment as to the Americans with Disabilities Act and Rehabilitation Act claims against the City and County is **GRANTED**.

7.  Defendants' motion for summary judgment as to the section 845.6 claim against the City, City officers, and County officer Corporal Basler is **GRANTED**.

8.  Defendants' motion for summary judgment as to the negligence claim against the County, County officers, City, and City officers is **GRANTED.**

(C)  Defendants' Motion for Summary Judgment is **DENIED** as to the following claims:

1.  Defendants' motion for summary judgment as to the Fourth and Fourteenth Amendment denial of medical care claims against the County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

2.  Defendants' motion for summary judgment as to Fourteenth Amendment familial interference claim against County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

3.  Defendants' motion for summary judgment as to the section 1983 claim for municipal and supervisory liability against the County and Sheriff Downey is **DENIED**.

4.  Defendants' motion for summary judgment as to the section 845.6 claim against the County and County officers Corporal Bittner, Corporal Hammer, Officer Swim, and Supervising Correctional Deputy Hershberger is **DENIED**.

(D)  Plaintiff's Fourteenth Amendment claim against City officers for denial of medical care is **DISMISSED AS MOOT**.

This order terminates Docket Nos. 67 and 72.

**IT IS SO ORDERED.**

Dated:  January 25, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

32